# The President and Managers of the Delaware and Schuylkill Canal Navigation *against* John Mifflin.

## Same *against* William Alexander and John Alexander.

. Under the act incorporating the Delaware and Schuylkill Canal Company, the jury shall judge whether a bridge or ford be necessary, but cannot find that neither is necessary.

Roads private or public laid out after 10th April 1792, shall not be bridged by the company, across the canal.

INQUISITIONS had been returned on writs issued between the parties, pursuant to the 8th section of the law passed 10th April, 1792, for incorporating the canal company.

Mr. Lewis now moved to set aside these inquisitions, under the 9th section of the law, and produced six deeds, dated 1753, 1760 and 1761, under which the defendants and others were entitled to a private road of the width of two perches, from the Wissahickon road, to the landing on the Schuylkill, which the track of the canal crossed. He contended that a bridge or ford ought to have been secured to the owners of the ground, who before the passing of the law, were entitled to a right of passage, under the 9th section, which directs, "that whenever the said canal shall cross any public or pri- "vate laid out road or highway, or shall divide the grounds "of any person into two parts, so as to require a ford or "bridge to cross the same, the jury who shall enquire of the "damages to be sustained in manner herein directed, shall "find and ascertain whether a passage across the same shall "be admitted and maintained by a ford or bridge; and on "such finding, &c."

Messrs. Tilghman and W. M. Smith for the canal company, urged, that it rested with the jury to say, whether either a ford or bridge was necessary, and if they found no necessity for either, the company were not bound to make one or the other. The words in the act, "public or private laid out "road," had a certain definite meaning, and pursued the lan- guage of former laws; they extended only to roads laid out by order of court; they shall be restrained to the same sense, as used in former acts. When the words of a law extend not to an inconvenience rarely happening, and do to those which often happen, it is good rea*son, not to strain the words further than they reach, by saying it is *casus* [*431 *omissus*, and that the law intended *quæ frequentius accidunt*. This rule of exposition is laid down in Vaugh. 373. A stat- ute which concerns the public good, shall be construed liber- ally. 2 Vern. 431.

Should this law be construed as is contended for by the present proprietors of the adjacent grounds, the canal company may be subjected to the extravagant difficulty of arching their canal from river to river, by parties perpetually shifting their grants of passage, and courts of justice laying out new roads; which never could have been the intention of the legislature, when they contemplated an object of such public utility.

Mr. Lewis in reply. I cannot subscribe to the construction set up; it is repugnant to every idea I have of justice. Any one who owns lands, may grant a right of passage over them, and the grantee will have an indisputable right to the privilege. 2 Stra. 1004. Roads laid out by the authority of courts of justice, only secure to the public this right of passage; and whether a party enjoys this benefit under the records of a court, or the grant of an individual, having authority to make it, his privilege is equally sacred and inviolable, and will be protected by the laws of the country. Can it be supposed, that the legislature meant to delegate powers to a jury, to determine whether a person should be stripped of a legal right, vested in him before the passing of an act, incorporating a public company, and for the emolument of that company? Shall such a jury have it in their power, to abridge or prevent any man's clear settled privilege of passage from his lands on the western side of Schuylkill to the city, Frankfort, Germantown, or other place? Surely not. The reasonable construction of the act must be, that the jury shall judge whether a bridge or ford be necessary; but they can go no further; they cannot find that neither is necessary. Undoubtedly the legislature intended to encourage the canal company in the prosecution of an enterprize, of considerable public advantage; but the whole scope of the act, shews, that the rights of individuals were not to be sacrificed. If any persons were injured by the canal, they were to be recompenced in damages or some other way. The difficulties feared by the company are merely imaginary. The law relates only to public or private roads laid out at the time of passing the act. Should new public roads be confirmed by the sessions across the canal, the public must bridge them at their own expence; if private ones, they must be bridged by the parties applying.

It cannot remain a question, whether individuals can affect the *interests of the company, by shifting their grants *432] of passage at this period; they certainly can have no such powers.

The court fully assented to this latter construction of the law, and set aside the inquisitions.